AO 91 (Rev. 02/09) Criminal Complaint

# United States District Court
### for the
### Western District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CHRISTOPHER MAJOR a/k/a Late Nite,<br><br>Defendant. | Case No. 25-MJ-4057 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about April 28, 2025, in the County of Monroe, in the Western District of New York, the defendant, violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) & 841(b)(1)(B) | Possession with intent to distribute 500 grams or more of cocaine |

This Criminal Complaint is based on these facts:
See attached affidavit.

☒ Continued on the attached sheet.

_____
JAMES M. GASHLIN, Task Force Officer
Drug Enforcement Administration
*Printed name and title*

Affidavit and Criminal Complaint submitted electronically by email in .pdf format. Oath administered, and contents and signature, attested to me as true and accurate telephonically pursuant to Fed.R.Crim. P. 4.1 and 4(d) on:

Date: April 30, 2025

City and State: Rochester, New York

_____
*Judge's signature*

HONORABLE COLLEEN D. HOLLAND
United States Magistrate Judge, WDNY
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

25-MJ-**4057**

CHRISTOPHER MAJOR a/k/a Late Nite,

Defendant.

**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT**

I, JAMES GASHLIN, affirm to the following facts:

1)   I have been a Task Force Officer with the Drug Enforcement Administration since September 2018, and I am currently assigned to the DEA Rochester Resident Office. Prior to becoming a DEA Task Force Officer, I became a Police Officer with the Rochester Police Department in 2006. During my employment with the Rochester Police Department, I completed the Basic Course for Police Officers at the Monroe County Public Safety Training Center, located in Rochester, NY and four months of field training. This training included familiarization of the physical characteristics, packaging, and field testing of illegal drugs and narcotics. I served as a Police Officer with the Rochester Police Department, assigned to Patrol Division East, until being promoted to the rank of Detective in May 2013. As a Detective I have been assigned to Patrol Division West Investigations, Clinton Section Investigations, Special Operations Section Tactical Unit Investigations, and the Special Investigations Section. As a Police Detective, I also completed a temporary assignment in the Major Crimes Unit, Homicide Team. During my career with the Rochester Police Department, I have attended numerous courses in criminal investigations and have had the

opportunity to conduct, coordinate, and/or participate in a number of successful investigations involving burglaries, robberies, weapons possession, narcotics possession, narcotics sales, arsons, assaults, sexual assaults, larcenies, and homicides. I have interviewed numerous defendants, victims, witnesses, and others who have been involved in or have knowledge of such crimes, including investigations relating to weapons and/or narcotics possession and/or sales. I am familiar with the methods of use, effects, distribution, appearance, as well as the methods of manufacture of controlled substances. I have been the affiant on multiple search warrants. During my time in the Special Investigations Section and the DEA Rochester Resident Office, I have participated in several long-term narcotics investigations that utilized the court-authorized interception of wire communications that resulted in the arrest of drug distributors and seizures of quantities of controlled substances and firearms. I have been a case agent and a co-case agent on Title III investigations; I have written affidavits for eavesdropping of cellular instruments; I have written affidavits for the monitoring and recording of visual, non-verbal conduct of individuals/locations pursuant to the lawful installation of closed-circuit television (commonly referred to as CCTV); I have monitored phone lines during Title III investigations, as well as intercepted and deciphered cryptic conversations involving drug and marijuana dealers and traffickers on numerous occasions during the course of these investigations; I have monitored CCTV during the Title III investigations and made observations involving drug and marijuana dealers and traffickers on numerous occasions. I am familiar with the habits, methods, routines, practices, and procedures commonly employed by persons engaged in the armed trafficking of illegal drugs. In addition, I have had the opportunity to work with other experienced narcotics officers on the Local, State, and Federal levels that all possess varying levels of experience and who have

all investigated drug distribution networks and individual distributors. These narcotics officers have further provided your affiant with a basis of knowledge and further educated your affiant on the various characteristics and/or methods of distribution of these trafficking organizations and/or individual distributors.

### Purpose of Affidavit

2) This affidavit is submitted in support of a criminal complaint for the limited purpose of establishing probable cause to believe that CHRISTOPHER MAJOR (hereinafter "**MAJOR**") has violated Title 21, United States Code, Section 841(a)(1) & 841(b)(1)(B) (possession with intent to distribute 500 grams or more of cocaine).

3) The assertions made herein are based solely upon my personal knowledge or upon information I have received from members of the Rochester Police Department involved in this investigation. Further, I have had discussions with officers involved in this investigation who have confirmed the accuracy of the information contained within this affidavit. Since this affidavit is being submitted for a limited purpose, I have not included each and every fact that I know concerning this investigation. Rather, I have set forth only those facts that relate to the issue of whether probable cause exists to believe that the defendant committed the above-mentioned offenses. In support thereof, I respectfully state the following:

### Background of Investigation

4) Since December of 2024, members of the Rochester Police Department – Special Investigations Section, hereinafter "Investigative Team," have been investigating the

illegal narcotics distribution occurring at 50 Sixth Street, Rochester, New York and the illegal narcotics distribution activities of Christopher **MAJOR**, aka "Late Nite."

5) During the investigation, the Investigative Team received information from and utilized Confidential Sources, hereafter CSs. The identity of each CS is known to members of the Investigative Team. Members of the Investigative Team have established and corroborated the truthfulness and reliability of each CS through surveillance and independent investigation where possible.

6) The Investigative Team learned from a CS that a black male known as "Late Nite" was responsible for operating the drug sales operation at 50 Sixth Street, Rochester, NY. Through searches of law enforcement and public databases, the Investigative Team learned that Christopher **MAJOR** has been documented with an alias of "Late Nite." Additionally, the Investigative Team learned that **MAJOR** had been documented as running a drug house at 457 Verona Street in 2023.

7) A search of law enforcement database also revealed that 25/27 Myrtle Street was documented as an active drug sales location in 2024. In February of 2025 Investigative Team learned that **MAJOR** has utility services with Rochester Gas & Electric in his name at 50 Sixth Street, 707 North Plymouth Avenue, and 182 Ferncliffe Drive, all in Rochester, NY. The Investigative Team also learned from Rochester Gas & Electric that the utility account at 457 Verona Street – Upstairs Apartment is in the name of T.D. with a telephone number of 585-851-1812. The Investigative Team further discovered that telephone number 585-851-1812 is a phone number associated with the "CashApp" profile associated with **MAJOR**, which utilizes username "$lazypablo28". A search of law enforcement and Department of Motor Vehicle databases revealed that **MAJOR** has 182 Ferncliffe Drive documented as his

residence. In April of 2025, the Investigative Team also learned from Rochester Gas & Electric that the utility account at 100 Bleacker Road is in the name of S.C.

### Surveillance of Christopher MAJOR

8) Through the use of both video and physical surveillance, the Investigative Team observed **MAJOR** operating the blue 2010 Chevrolet Silverado, bearing New York State registration LHJ8134, hereafter Target Vehicle, on numerous occasions at both 182 Ferncliffe Drive and 50 Sixth Street. **MAJOR** was observed to typically park the Target Vehicle in the driveway of 50 Sixth Street, and **MAJOR** was observed to enter the residence for typically only a matter of several minutes. **MAJOR** was observed to travel from his home of 182 Ferncliffe Drive directly to 50 Sixth Street on numerous occasions. On several days, **MAJOR** travelled to the same few addresses of 182 Ferncliffe Drive, 50 Sixth Street, the 100 block of Lyell Avenue, and the vicinity of 25/27 Myrtle Street. On several occasions, **MAJOR** was observed to park in the area of the Lyell Avenue and Verona Street (the vicinity of the 100 block of Lyell Avenue) then walk to 457 Verona Street.

9) Throughout the investigation, investigative team members utilized pole camera footage in the area of 50 Sixth Street, 25/27 Myrtle Street, and 100 Bleaker Road to observe **MAJOR** arriving and leaving the locations on numerous occasions. Investigators also utilized a Rochester City blue light camera in the area of 457 Verona Street to observe **MAJOR** parking and walking down the area of Verona Street.

10) On February 21, 2025, members of the Rochester Police Department did conduct a traffic stop on the Target Vehicle after it departed 50 Sixth Street. During this traffic stop, **MAJOR** was identified as the driver and sole occupant of the vehicle.

11) On February 17, 2025, Honorable Julie Hahn, Monroe County Court Judge, authorized and signed a court order for the installation and monitoring of a GPS/Tracking Device on the Target Vehicle. Data received from the GPS/Tracking Device installed on the Target Vehicle revealed that the vehicle did travel to and from the vicinities of 182 Ferncliffe Drive, 50 Sixth Street, 25/27 Myrtle Street, 457 Verona Street, and later in the investigation to 100 Bleacker Road approximately several times per week each. A sample of the travels observed from the data received from the GPS/Tracking Device installed on the Target Vehicle is as follows:

 (a) February 24, 2025 – from 50 Sixth Street to 182 Ferncliffe Drive

 (b) February 25, 2025 – from 182 Ferncliffe Drive to 50 Sixth Street, then back to 182 Ferncliffe Drive

 (c) February 26, 2025 – from 182 Ferncliffe Drive to 122 Lyell Avenue

 (d) March 6, 2025 – from 182 Ferncliffe Drive to 100 Bleacker Road, then back to 182 Ferncliff Drive

 (e) March 8, 2025 – from 41 Myrtle Street to 182 Ferncliffe Drive

 (f) March 9, 2025 – from 182 Ferncliffe Drive to 33 Myrtle Street, then to 115 Lyell Ave, then to 38 Myrtle Street, and then to 182 Ferncliffe Drive

 (g) March 11 2025 – from 54 Myrtle Street to 182 Ferncliffe Drive

 (h) March 12, 2025 – from 182 Ferncliffe Drive to 50 Sixth Street, then to 100 Bleacker Road, then to 182 Ferncliffe Drive

 (i) March 13, 2025 – from 27 Myrtle Street to 139-145 Lyell Avenue

 (j) March 18, 2025 – from 113 Lyell Avenue to 27 Myrtle Street

 (k) March 21, 2025 – from 182 Ferncliffe Drive to 50 Sixth Street

(l) March 24, 2025 – from 182 Ferncliffe Drive to 50 Sixth Street, then back to 182 Ferncliffe Drive

(m) March 28, 2025 – from 182 Ferncliffe Drive to 50 Sixth Street

(n) March 28, 2025 – from 121 Lyell Avenue to 60 Myrtle Street, then to 50 Sixth Street, and then to 182 Ferncliffe Drive

(o) April 1, 2025 – from 182 Ferncliffe Drive to 100 Bleacker Road, then back to 182 Ferncliffe Drive

(p) April 1, 2025 – from 182 Ferncliffe Drive to 50 Sixth Street

(q) April 4, 2025 – from 182 Ferncliffe Drive to 136 Lyell Avenue, then to 50 Sixth Street, and back to 182 Ferncliffe Drive

(r) April 5, 2025 – from 50 Sixth Street to 182 Ferncliffe Drive

(s) April 7, 2025 – from 182 Ferncliffe Drive to 100 Bleacker Road, then back to 182 Ferncliffe Drive, and then to 6 Short St (which is in the vicinity of 50 Sixth Street)

(t) April 7, 2025 – from 182 Ferncliffe Drive to 50 Sixth Street, then back to 182 Ferncliffe Drive

(u) April 8, 2025 – from 50 Sixth Street to 136 Lyell Avenue

(v) April 8, 2025 – from 182 Ferncliffe Drive to 41 Myrtle Street, then to 421 Verona Street, and back to 182 Ferncliffe Drive

(w) April 9, 2025 – from 100 Bleacker Road to 182 Ferncliffe Drive, then to 50 Sixth Street, back to 100 Bleacker Road, and then to 182 Ferncliffe Drive

(x) April 9, 2025 – from 182 Ferncliffe Drive to 100 Bleacker Road, then back to 182 Ferncliffe Drive

  (y) April 11, 2025 – from 100 Bleacker Road to Short St. (in the vicinity of 50 Sixth Street), and then to 182 Ferncliffe Drive

  (z) April 17, 2025 – from 182 Ferncliffe Drive to 50 Sixth Street, then to 100 Bleacker Road

  (aa) April 20, 2025 – from 182 Ferncliffe Drive to 100 Bleacker Road, then to 50 Sixth Street

  (bb) April 22, 2025 – from 100 Bleacker Road to 50 Sixth Street

  (cc) April 23, 2025 – from 182 Ferncliffe Drive to 50 Sixth Street, then to 25/27 Myrtle Street, then to 457 Verona Street, then to 50 Sixth Street, and then to 100 Bleacker Road

  12) On April 11, 2025, members of the Investigative Team observed **MAJOR** park the Target Vehicle in the driveway of 100 Bleacker Road. **MAJOR** was observed exiting the vehicle and walking through the gate in the stockade fence and walking toward the property. On April 17, 2025, **MAJOR** was observed departing 50 Sixth Street and carrying a bag into the Target Vehicle. **MAJOR** then drove directly to 100 Bleacker Street, where he was observed entering the residence carrying what appeared to be the same bag.

  13) Over the course of the investigation, the Investigative Team observed a change in the travel patterns of **MAJOR** in approximately April of 2025. The Investigative Team observed that **MAJOR** switched from typically spending the overnight hours at 182 Ferncliffe Drive on most nights to spending the overnight hours at 100 Bleacker Road. On one occasion in April of 2025, the Investigative Team observed **MAJOR** carrying what appeared to be a dog crate, and on another occasion observed **MAJOR** to be carrying bags, into 100 Bleacker Road. The Investigative Team and your affiant believe that **MAJOR** had been residing at

182 Ferncliffe Drive and moved his residence to 100 Bleacker Road. However, **MAJOR** did continue to frequent 182 Ferncliffe Drive.

### Controlled Purchases of Illegal Narcotics

14) During the course of the investigation, the Investigative Team conducted controlled purchases from several locations utilizing multiple CSs. From approximately December of 2025 through April of 2025, approximately eight (8) controlled purchases of quantities of crack cocaine were purchased from 50 Sixth Street. During April of 2025, approximately three (3) controlled purchases of crack cocaine from the rear door of 25/27 Myrtle Street. From approximately January of 2025 through April of 2025, approximately two (2) controlled purchases of crack cocaine and two (2) controlled purchases of fentanyl were made from 457 Verona Street.

### Execution of New York State Search Warrants on April 28, 2025

15) On April 24, 2025, Honorable Victoria Argento, Supreme Court Justice, authorized and signed a search warrants for the following residences, vehicle, and person: 50 Sixth Street, Rochester, NY; 182 Ferncliffe Drive, Rochester, NY; 25 Myrtle Street, Rochester, NY; 27 Myrtle Street, Rochester, NY; 100 Bleacker Road, Rochester, NY; 457 Verona Street – Upstairs and Downstairs Apartments, Rochester, NY; the blue 2010 Chevrolet Silverado, bearing New York State registration LHJ8134 and VIN 1GCSKSE36AZ258750; and the person of Christopher **MAJOR**. On April 28, 2025, members of the Rochester Police Department lawfully executed these search warrants.

16) During the initial entry into 100 Bleacker Road, Rochester, NY, **MAJOR** was located on the first floor near the kitchen, and S.C. was located in the first-floor master bedroom. During the search of 100 Bleacker Road, Rochester, NY, the following items were located and seized:

    (a) Located in the second-floor south bedroom closet was an open green backpack, which was found to contain four (4) tan/clear/black wrapped packages of a whitish powdery substance (consistent with the appearance of cocaine), two loose chunks of a whitish powdery substance (consistent with the appearance of cocaine), a white digital scale with whitish residue was located on the floor of this closet, and a clear sandwich bag containing a whitish powdery substance (consistent with the appearance of cocaine).

    (b) Located in the first-floor master bedroom closet was a backpack that was found to contain $26,234.00 U.S. Currency. Additionally, several boxes of men's sneakers were observed in this closet.

    (c) Located in the first-floor master bedroom were several keys on the dresser along with S.C.'s employment identification, mail addressed to S.C. at 182 Ferncliffe Drive, and 4 cellular telephones.

    (d) Located in the driveway on 100 Bleacker Road was the blue 2010 Chevrolet Silverado, bearing New York State registration LHJ8134. During the search of this vehicle, several loose keys were located in the driver's door and the center console area, as well as paperwork in the name of Christopher **MAJOR** at 182 Ferncliffe Drive. Included in the documents

      located inside this vehicle was tax payment information for 50 Sixth Street and 25/27 Myrtle Street.

(e) **MAJOR** was also searched pursuant to the search warrant. During this search, **MAJOR** informed Detectives that his girlfriend had nothing to do with it.

(f) Members of law enforcement subsequently discovered that one of the keys located in the blue 2010 Chevrolet Silverado did operate the dead bolt lock on the front door of 457 Verona Street. The keys located on the master bedroom dresser of 100 Bleacker Road did operate the locks on the side door of 182 Ferncliffe Drive, a padlock that secured the master bedroom door within 182 Ferncliffe Drive (a room in which narcotics and U.S. Currency were located), and the locking mechanism on a door at 25 Myrtle Street.

(g) The quantities of suspected cocaine located within 100 Bleacker Road were processed as evidence. In total, approximately 5.140 kilograms (including drug packaging) of cocaine was located within the residence. Drug field tests were conducted on samples taken from the suspected cocaine located within 100 Bleacker Road, which did yield positive results for the presence of cocaine.

17) During the initial entry into 182 Ferncliffe Drive, Rochester, New York, J.M was found to be the sole occupant and was located on the couch in the living room. During the search of 182 Ferncliffe Drive, the following items were located and seized:

(a) Located in the master bedroom was $7,469.00 U.S. Currency on the bed, $378.00 U.S. Currency in a water jug, a powdery substance (consistent with the appearance of fentanyl) located in a plastic blender cup on the dresser, mail addressed to **MAJOR** on the bed and in a box on the floor, **MAJOR**'s U.S. Passport in the closet, a cellular telephone on the dresser, multiple keys, and a padlock was also found to secure the master bedroom door (one of the keys located on the master bedroom dresser of 100 Bleacker Road were found to operate this padlock).

(b) Located in the garage of the residence was a safe that was found to contain $136,730.00 U.S. Currency.

(c) Located in the living room was a zipper pouch on a shelf that contained new/unused purple Ziploc-style bags, and a DVR system.

(d) Located in the upstairs hallway were a New York State Identification and personal mail, both in **MAJOR**'s name.

(e) Located in the kitchen was a box of Armscor .45 caliber ammunition containing 50 live rounds of .45 caliber ammunition, two digital scales, a rubber container with whitish residue, a fork with whitish residue, a metal pot that contained a quantity of an off-white wax-like substance (consistent with the appearance of crack cocaine), and personal mail in the name of **MAJOR** and J.I.

(f) The quantities of suspected fentanyl and crack cocaine located within 182 Ferncliffe Drive were processed as evidence. The suspected fentanyl located in the master bedroom was found to weigh approximately 10 grams.

A drug field test was conducted on a sample taken from this suspected fentanyl, which did yield positive results for the presence of fentanyl. The suspected crack cocaine found in the kitchen was found to weigh approximately two (2) grams. A drug field test was conducted on a sample taken from this suspected crack cocaine, which did yield positive results for the presence of cocaine.

18) During the initial entry into 50 Sixth Street, Rochester, New York, C.D. was found to be the sole occupant and was located hiding in the bathtub in a first-floor bathroom near the kitchen. During the search of 50 Sixth Street, the following items were located and seized:

(a) Located in the first-floor middle bedroom was $403.00 U.S. Currency on the bed, C.D.'s New York State Identification on the bed, a bag containing 27 packages containing an off-white wax-like substance (consistent with the appearance of crack cocaine), three (3) unknown pills in a green coat on the bed, one (1) bag containing a green leafy substance (consistent with the appearance of marijuana) on the bed, a cellular telephone on the table near the bed, and two (2) cellular telephones on the bed. Also located in this bedroom was a set of keys and a DVR.

(b) Located in the kitchen was a digital scale in a cabinet, three digital scales on the counter, a key in a cabinet, one (1) bag containing a substance consistent with the appearance of mushrooms on the counter, a quantity of new/unused plastic vials in a plastic bag on the counter,

  (c) During a search of C.D., a total of $1,415.00 U.S. Currency was located in several clothing pockets, along with five (5) amphetamine pills, and twelve (12) unknown pills.

  (d) Located in a second-floor bedroom was identification in the name of M.T.

  (e) The quantity of suspected cocaine located within 50 Sixth Street was processed as evidence. The 27 packages containing suspected crack-cocaine found in the first-floor middle bedroom were observed to be thirteen (13) knotted sandwich bag corners, thirteen (13) small clear Ziploc-style bags, and one (1) clear plastic vial. This suspected crack cocaine was found to weigh approximately 18.1 grams (including drug packaging). Drug field tests were conducted on samples taken from this suspected crack cocaine, which did yield positive results for the presence of cocaine.

19) During the initial entry into the two-occupancy dwelling of 457 Verona Street – Upstairs and Downstairs Apartments, Rochester, New York, L.S. was found in the living room and D.S. was found the bedroom, both in the downstairs apartment. During the search of 457 Verona Street, the following items were located and seized:

  (a) Located in the second-floor bedroom on the northeast side of the residence were several ledgers with handwritten notes documenting apparent narcotics transactions on top of a dresser and in a plastic drawer, documents in the name of M.J. on top of a dresser and in a plastic drawer, and a quantity of new/unused small clear Ziploc style bags on top of the dresser.

(b) Located in a separate second-floor bedroom was a DVR, a gas mask, a package of new/unused clear baggies, and a ledger with handwritten notes documenting apparent narcotics transactions.

20) During the initial entry into the two-occupancy dwelling of 25/27 Myrtle Street, Rochester, New York, K.F. was located in the first-floor bedroom of 25 Myrtle Street, A.C. was located in the first-floor kitchen of 25 Myrtle Street, and 27 Myrtle Street was found to be unoccupied. During the search of 25/27 Myrtle Street, the following items were located and seized:

(a) Located in the first-floor kitchen of 25 Myrtle Street was a chunk of an off-white wax-like substance (consistent with the appearance of crack cocaine) and numerous plastic vials containing an off-white wax-like substance (consistent with the appearance of crack cocaine) on the table, and a plate containing a small amount of an off-white powdery substance (consistent with the appearance of fentanyl) in a cabinet. Also located in this kitchen were approximately several hundred new/unused plastic vials, blenders with whitish residue, plates, vials, glass stems, a sifter/screen, digital scales, and $1,023.00 U.S. Currency.

(b) The quantity of suspected crack cocaine located within 25 Myrtle Street was processed as evidence. This suspected crack cocaine was found to weigh approximately 3.8 ounces (including drug packaging). A drug field test was conducted on a sample taken from this suspected crack cocaine, which did yield positive results for the presence of cocaine. The quantity of suspected fentanyl located within 25 Myrtle Street was also processed as evidence. A

drug field test was conducted on a sample taken from this suspected fentanyl, which did yield positive results for the presence of fentanyl.

21) Based upon your affiant's training and experience in this and other investigations, your complainant believes that the digital scales located during the execution of the search warrants are commonly used by narcotics traffickers to weigh amounts of narcotics to be sold. Additionally, your affiant believes that the new/unused Ziploc-style bags and new/unused plastic vials are commonly used by narcotics distributors to package individual amounts of illegal narcotics for sale. Also, your affiant believes that the quantities of cocaine, crack cocaine, and fentanyl located during the execution of these search warrants was possessed with the intent to distribute, and not solely for the purpose of personal use.

22) Based upon physical and electronic surveillance of **MAJOR** by the Investigative Team, as well as the items seized from the search warrants, your affiant believes that **MAJOR** would routinely supply narcotics to 50 Sixth Street, 25/27 Myrtle Street, and 457 Verona Street for street level sales. **MAJOR** further resided at 182 Ferncliffe Drive and 100 Bleaker Road and utilized those locations as stash locations for bulk quantities of narcotics and proceeds from his narcotics sales.

### Interview of MAJOR

23) An interview of MAJOR was conducted at the Rochester Police Department – Public Safety Building. After he was advised of his *Miranda* rights, he indicated that he understood them and was willing to speak with law enforcement. In sum and substance, **MAJOR** advised that he believed the reason for the investigation was drugs, adding that his

girlfriend had nothing to do with anything. **MAJOR** was asked about the items located at 100 Bleacker Road, but did not provide any information.

### MAJOR's relevant Criminal History

24)     On January 30, 2002, **MAJOR** was convicted upon plea of guilty to Criminal Possession of a Loaded Firearm in the Third Degree (a Felony), and subsequently sentenced to a term of one (1) year incarceration.

### Conclusion

Based on the above information, your affiant submits there is probable cause to believe that on or about April 28, 2025, in the City of Rochester, County of Monroe, Western District of New York, Christopher MAJOR violated Title 21, United States Code, Section 841(a)(1) & 841(b)(1)(B) (possession with intent to distribute 500 grams or more of cocaine).

_____
JAMES GASHLIN
Task Force Officer
Drug Enforcement Administration

Affidavit and Criminal Complaint Submitted electronically by email in .pdf format. Oath administered, and contents and signature, attested to me as true and accurate telephonically pursuant to Fed.R.Crim.P. 4.1 and 4(d) on April 30, 2025.

_____
HON. COLLEEN D. HOLLAND
United States Magistrate Judge
Western District of New York